UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LEON KILLS IN WATER,<br><br>Defendant. | 3:15-CR-30031-RAL<br><br>**OPINION AND ORDER ON MOTION FOR COMPASSIONATE RELEASE** |

A federal grand jury indicted Leon Kills In Water (Kills In Water) on one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 and one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 2. Doc. 39. On September 14, 2015, Kills In Water appeared before this Court and entered a guilty plea to a charge in a superseding indictment of conspiracy to distribute a controlled substance. Doc. 71. On December 7, 2015, this Court held a sentencing hearing in Kills In Water's case and imposed a custody sentence of 120 months to be followed by five years of supervised release. Docs. 86; 87 at 2–3.

Kills In Water is currently incarcerated at Federal Correctional Institution Forrest City Low (FCI Forrest City Low) and has filed a pro se motion for compassionate release, citing his health conditions in combination with the global COVID-19 pandemic as justification. Doc. 140. The Government has responded in opposition. Doc. 144. This Court has considered Kills In Water's motion, and for the reasons stated herein, denies his motion at this time.

**I.    Background**

1

Kills In Water's conviction resulted from distributing a large quantity of methamphetamine on the Rosebud Sioux Indian Reservation in South Dakota. Doc. 82 at ¶¶ 7–13. From June to October of 2014, Kills In Water was involved in a conspiracy with at least one other individual to distribute at least 500 grams of methamphetamine. Doc. 82 at ¶¶ 7–13. Kills In Water was a leader/supervisor of the conspiracy. Doc. 82 at ¶¶ 7, 13.

On October 15, 2014, Kills In Water and his co-defendant Suni Wooden Knife (Wooden Knife) were at the Rosebud Casino Quality Inn located on the Rosebud Sioux Indian Reservation. Doc. 82 at ¶¶ at 7, 10. Hotel staff recognized Kills In Water from a previous weekend and observed heavy traffic in and out of his hotel room. Doc. 82 at ¶ 10. Kills in Water and Wooden Knife played slot machines until they were approached by others, at which point all individuals would leave the gaming floor and return a short time later. Doc. 82 at ¶ 10. Considering this behavior to be suspicious, hotel staff contacted law enforcement. Doc. 82 at ¶ 10. Law enforcement obtained a warrant to search Kills In Water's hotel room and, among other things, found approximately 100 grams of methamphetamine and $6,221 in cash, which was related directly or indirectly to the conspiracy to distribute methamphetamine. Doc. 82 at ¶¶ 10–11. Kills In Water admitted that aside from the 100 grams of methamphetamine found in his hotel room, he had been involved in distributing at least another 400 grams of methamphetamine from June up until his arrest. Doc. 82 at ¶ 9.

Under the sentencing guidelines, Kills In Water's total offense level for this offense was 29 and Kills In Water was in criminal history category II. Doc. 82 at ¶¶ 28, 35, 55. This meant that Kills In Water's advisory guideline range was 97 months to 121 months of custody. Doc. 82 at ¶ 55. However, the offense to which Kills In Water pled guilty has a mandatory minimum sentence of 120 months; therefore, his guideline range was 120 to 121 months. Docs. 88, 82 at ¶

55. This Court held a sentencing hearing in Kills In Water's case on December 7, 2015. Doc. 86. After hearing argument from both parties as to the appropriate sentence and from Kills In Water himself, this Court sentenced Kills In Water to 120 months in custody with a five-year term of supervised release. Docs. 86; 87 at 2–3. Kills In Water has been in custody since March 12, 2015, and is currently incarcerated at FCI Forrest City Low. Doc. 22; see also Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Dec. 14, 2020).

In early 2020, a novel coronavirus, COVID-19, quickly spread across the United States and infiltrated correctional institutions. As a new virus, COVID-19 has presented somewhat of a mystery to medical professionals and society in general. Some people can contract the virus and be completely asymptomatic, while other people develop complications and die from the illness. The Centers for Disease Control and Prevention (CDC) have identified certain underlying health conditions that put individuals at higher risk for a severe form of the illness if they contract the disease. Among those at higher risk are individuals with cancer, chronic kidney disease, obesity, serious heart conditions, sickle cell disease, and Type 2 diabetes. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Dec. 14, 2020).

Kills In Water claims he suffers from numerous medical conditions including high blood pressure, depression, back pain, liver damage, diabetes, and obesity. Doc. 140 at 1. However, his medical records only substantiate his claims of depression and back pain. Doc. 142 at 220. Nevertheless, Kills in Water has now filed a motion for compassionate release with this Court

3

based on those circumstances and his inability to practice social distancing in the correctional facility setting during the COVID-19 pandemic. Doc. 140.

## II. Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed," except in a few, narrow circumstances. 18 U.S.C. § 3582(c). The compassionate release statute as amended by the First Step Act of 2018 provides one of those narrow avenues through which a sentence may be modified. The compassionate release statute provides in pertinent part that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; ...
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). "The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." United States v. Loggins, 966 F.3d 891, (8th Cir. 2020). Ultimately, the defendant bears the burden of establishing that a sentence reduction is warranted. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

## III. Discussion

Kills In Water submitted a request for compassionate release to the warden of his institution on September 3, 2020, outlining some of his medical conditions and his possible release plan. Doc. 140-1 at 8. Kills In Water's request was submitted more than thirty days ago, and the BOP

4

has not submitted a motion for compassionate release on Kills In Water's behalf. Therefore, this Court may entertain Kills In Water's motion directly.

In determining whether compassionate release is justified, this Court must consider the sentencing factors in 18 U.S.C. § 3553(a), determine whether "extraordinary and compelling reasons" warrant a sentence reduction, and evaluate whether a sentence reduction is consistent with the Sentencing Commission's applicable policy statements. See 18 U.S.C. § 3582(c). The sentencing factors found in 18 U.S.C. § 3553(a) instruct this Court to consider the applicable guidelines issued by the Sentencing Commission; "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" to adequately deter criminal conduct, to protect the public; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). This Court also should consider the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6).

In conducting its analysis on compassionate release motions, this Court begins by considering the applicable § 3553(a) sentencing factors. The nature and circumstances of the offense are detailed above and likely impacted many lives in South Dakota. At least 500 grams of methamphetamine were distributed in South Dakota over several months by Kills In Water and his co-conspirators. Kills In Water was considered a leader/supervisor of the conspiracy. Based on the large quantity of drugs, his criminal history, and the mandatory minimum sentence of 120 months in custody, Kills In Water's guideline range was 120 to 121 months in custody. A sentence at the bottom of the guideline range like the one imposed was necessary for several reasons. First, a lengthy sentence adequately reflected the seriousness of the offense and provided just

punishment. Second, the type of criminal conduct at issue here requires a powerful deterrent, and a 120-month custody sentence was designed to protect the public and to provide Kills In Water with substance abuse treatment in an effective manner. Doc. 87 at 2. Overall, the 120-month sentence was sufficient to achieve the § 3553(a) sentencing factors, but not greater than necessary.

Kills In Water has now served approximately 59.4% of his full sentence and has served approximately 67.6% of his "statutory term." Doc. 142 at 251. Since he entered BOP custody, Kills In Water, now age 36, has completed 11 education courses and is currently completing classes in 21st century employability and preparing financial future. Doc. 142 at 248. He has only three discipline reports. Doc. 142 at 247. This Court compliments Kills In Water on his efforts at self-improvement in custody.

This Court next determines whether "extraordinary and compelling" reasons exist to modify a sentence. Congress has directed the Sentencing Commission to describe and provide examples of what constitutes "extraordinary and compelling" reasons with respect to the compassionate release statute. 28 U.S.C. 994(t). The Sentencing Commission provided such examples in the commentary to United States Sentencing Guideline 1B1.13. Those reasons include the defendant's terminal illness or debilitating physical or mental condition, the defendant's age in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also included a "catch all" provision which allows one to find "extraordinary and compelling" reasons other than those specifically listed "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(D). However, since the First Step Act was passed, the Sentencing Commission has not updated its policy statement because it has not had a quorum. As a result, district courts have questioned whether the policy statement still applies and whether courts may consider other

"extraordinary and compelling" reasons under the "catch all" provision. See <u>United States v. Mondaca</u>, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); <u>United States v. Spears</u>, No. 98-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); <u>United States v. Brown</u>, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same). Many district courts have determined that the discretion given to the Director of the BOP by the Sentencing Commission extends to federal judges and allows them to consider "extraordinary and compelling reason[s] other than" those specifically described. <u>United States v. Condon</u>, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D)).

Kills In Water argues that there are "extraordinary and compelling" reasons to grant his release, but he does not articulate under what provision of the U.S.S.G. § 1B1.13 comment note he qualifies for. Doc. 140. Conceivably, he argues that he qualifies under both Comment note 1(A) and 1(D), so this Court will address each in turn. Comment note 1(A) provides in relevant part that "extraordinary and compelling" reasons may exist if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). However, Kills In Water does not claim that it is his serious physical or medical conditions that makes him unable to provide self-care in his correctional facility. Rather, he argues that the conditions of confinement, a factor not contemplated by the comment note, make it difficult or impossible to practice the type of self-care recommended by the CDC. Therefore, Kills In Water cannot establish "extraordinary and compelling" reasons to justify a sentence reduction under comment note 1(A)(ii).

7

This Court next considers Kills In Water's circumstances under the "catch all provision." Kills In Water seems to argue that his underlying health conditions combined with the COVID-19 pandemic establish an "extraordinary and compelling" reason other than those specifically identified to justify a sentence reduction. The COVID-19 pandemic has impacted this country and its economy in extraordinary ways. However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

FCI Forrest City Low currently has 60 active inmate infections of COVID-19 and 15 active COVID-19 cases among the facility's staff; 607 inmates and four staff have recovered from the illness, and the facility has reported zero deaths. See COVID-19, Coronavirus, Federal Bureau of Prisons https://www.bop.gov/coronavirus/ (last visited Dec. 14, 2020). The question becomes whether Kills In Water's medical conditions combined with the conditions of confinement during the COVID-19 pandemic justify compassionate release.

Kills In Water claims he suffers from high blood pressure, depression, back pain, liver damage, diabetes, and obesity. Doc. 140 at 1. However, his medical records do not substantiate his claims that he suffers from high blood pressure, liver damage, diabetes, or obesity. Doc. 142. Rather, his medical records confirm only that he suffers from depression and back pain, see Doc. 142 at 229, and the CDC does not list either ailment as conditions that place individuals at high risk if they contract the disease.

Kills In Water has served over half of his 120-month sentence for distributing a substantial amount of methamphetamine. Kills In Water appears, to his credit, to have worked on improving

8

himself in custody. But the custody sentence was chosen with care, considering Kills In Water's and his community's needs and all of the other applicable sentencing factors. Despite the risks posed by COVID-19, this Court does not find "extraordinary and compelling reasons" to justify a sentence modification because such a reduction would not be sufficient to achieve the goals of sentencing.

IV. **Conclusion and Order**

Therefore, it is hereby

ORDERED that Kills In Water's motion for compassionate release, Doc. 140, is denied.

DATED this 15th day of December, 2020.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE